UNITED STATES OF AMERICA
DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW BALLENGER

    Plaintiff

v.

CALVIN UNIVERSITY
and KEVIN VAN DUYN

    Defendants
_____/

Case No. 23-cv-647

Hon:

Attorneys for plaintiff:
NACHT & ROUMEL, P.C.
Nicholas Roumel (P37056)
101 N. Main St., Ste. 555
Ann Arbor MI 48104
734-663-7550
nroumel@nachtlaw.com

## COMPLAINT AND JURY DEMAND

Plaintiff makes his complaint as follows:

### Introduction

Andrew Ballenger asserts that after he disclosed a disability to his baseball coach at Calvin University, he was discriminated against by being dismissed from the team, and that Calvin's officials perpetuated the discrimination through a one-sided investigation that deprived Andrew of a meaningful remedy in violation of federal disability rights law.

1

**Parties/Jurisdiction/Venue**

1. Plaintiff Andrew Ballenger is a permanent resident of the state of Ohio.

2. Defendant Calvin University is a State of Michigan private university in Grand Rapids, Kent County, Michigan, in the Western District of Michigan.

3. Defendant Kevin Van Duyn was at all times relevant the head coach of Calvin's baseball team, who dismissed Andrew from the baseball team.

4. The events giving rise to this lawsuit primarily occurred on campus at Calvin University.

5. Jurisdiction is proper in this court under 28 U.S.C. §1331 (federal question jurisdiction under the Section 504 of the Rehabilitation Act of 1973. Supplemental jurisdiction over Plaintiff's state law claim is proper pursuant to 28 U.S.C. §1367 as this claim arises from the same case and controversy.

6. Venue is proper in the Western District of Michigan per 28 USC § 1391 (b) (1) and (2), as the cause of action occurred in Kent County, Michigan.

**About Andrew Ballenger**

7. Andrew is a 2017 graduate of the Upper Arlington (OH) High School, after being recruited from St. Charles Preparatory School in Columbus, Ohio, to play baseball.

8. He played baseball for St. Joseph University in Philadelphia, then at Cuyahoga Community College in Ohio, before transferring to Calvin University in 2019 after being recruited by their baseball team and coach, Kevin Van Duyn.

2

9. He played well in the 2019 fall season and won a spot as the starting right fielder. He was assured by Coach Van Duyn that he was an important part of team and that "we're going to need you these next few years."

10. He played three games for Calvin's baseball team in the 2020 spring season before it was canceled due to the COVID pandemic.

11. Coach assured Andrew that he was a key component of the team and sought his commitment to return for the 2021 season.

12. Although Andrew missed several practices in the fall, 2020 due to illness, he remained the starting right fielder heading into the spring, 2021 season.

13. Andrew is a person with a disability. In the first game of the 2021 season, on March 12, in Wheaton, Illinois, Andrew began to suffer panic attacks. He alerted the team trainer who advised he stay out of the second game of that day's doubleheader.

14. Coach noticed Andrew hyperventilating after the first game, and after talking with the trainer, agreed to hold Andrew out of the second game.

15. Andrew played both games of the March 13 doubleheader, starting in right field and getting 2 hits in 6 at bats, with 3 runs batted in.

16. After that series, Andrew candidly discussed his recurrent anxiety with coaches and some players. Coach Van Duyn's father, Harold, was an assistant coach. He suggested Andrew visit Pine Rest Christian Mental Health Services in Grand Rapids to seek treatment for his mental health issues.

17. Andrew did visit Pine Rest the next day where he was diagnosed with panic attacks and mild situational depression. He was prescribed Beta blockers to help control his anxiety symptoms.

18. He disclosed his diagnosis and treatment to his coaches, including Coach Kevin Van Duyn, who assured him he was still an important part of the team.

19. However, after playing in the next scheduled games (a doubleheader on March 19, where Andrew went 2-8 with 2 RBI), Coach inexplicably benched Andrew for a long stretch, starting with a doubleheader on March 20 where Andrew had many friends and family members travel from Ohio to watch him.

20. Afterwards, Andrew approached Coach for a meeting, as he wanted an explanation as to why the Coach had seemingly soured him and benched him shortly after he returned from Pine Rest.

21. That meeting took place on or around March 22, in which the Coach relentlessly criticized Andrew for 30-40 minutes about his "attitude" and accused him of being a negative presence on the team.

22. After that meeting the Coach benched Andrew for the next three games, including a doubleheader on March 26, and the first game of the March 27 doubleheader.

23. When Andrew finally returned to play he did very well; in his following three starts, on March 27 and 30, he went 5-9 with 4 RBIs.

24. Unfortunately, Andrew missed the following five games due to a concussion. But even after he was cleared to play, Coach Van Duyn benched him again. Andrew only had four at bats when he finally returned on April 16, and he never saw the field for the rest of his season.

25. Around April 19, Coach Van Duyn called Andrew into his office, again to discuss his "attitude." Andrew pleaded that he was doing his best to stay positive and

4

avoid being a distraction to the team. He stressed how important baseball was to him, and said he worried that his mental health was deteriorating due to the stress.

26. Coach was not sympathetic. He told Andrew his attitude was too negative, that if he was not able to fix it, he would likely be off the team. He said that he was "exhausted" with Andrew, and was tired of dealing with him so often.

27. Andrew's mother, Constance, contacted the Coach on or about April 19. She expressed her concern about Andrew and that his anxiety seemed to be getting worse. Coach responded sympathetically and falsely replied that Andrew had asked to not play. Misled, Constance thanked Coach for his apparent compassion towards Andrew.

28. However, after that call, Andrew never again left the bench, and was about to be dismissed from the team.

29. Sure enough, on April 25, Coach Van Duyn told Andrew he had something to discuss with him. They met the next day.

30. In that April 26 meeting, Andrew arrived to see both Coach Kevin Van Duyn and Kevin's father and assistant coach, Harold Van Duyn, both in attendance. Coach Kevin proceeded to tell Andrew that he was kicked off the team for having a "bad attitude" and for being a "bad teammate." He told Andrew that he had exhausted his resources and he no longer wanted to deal with him.

31. After berating Andrew for 30 minutes or more, Coach Kevin invited his own father, Coach Harold, to address Andrew. Coach Harold proceeded to criticize Andrew for not coming to practice with a better attitude, claiming that he should be able to put my issues to the side and tough it out for his teammate's sake. Coach Harold then

5

stated that if he could himself show up for practices and games despite being a cancer survivor, Andrew had no right to complain or "whine" about his own predicament or mental health issues.

32. After hearing this, Andrew stood up and left the meeting. Before he was able to return home, his name, statistics, and profile had already been deleted from the team website.

33. And so ended a baseball career that had held such promise. Andrew had excelled at every level previously, and transferred to Calvin only on the promises of Coach Van Duyn. After Andrew's successful 2019 fall season at Calvin, and the COVID cancellation of the 2020 spring season, he was looking forward to advancing his baseball career with sustained success in 2021 – only to have Van Duyn's discriminatory conduct kill Andrew's desire for a sport he so loved.

## LEGAL ALLEGATIONS
### Count I – Section 504 of the Rehabilitation Act of 1973
### (Defendant Calvin University only)

34. Section 504 of the Rehabilitation Act of 1973, [Pub. L. 93-112, as amended by the Rehabilitation Act Amendments of 1974, Pub. L. 93-516, 29 U.S.C. 794] prohibits discrimination based on disability in any program or activity operated by recipients of federal funds:

35. Andrew is a person with a disability, because he has a mental or psychological disorder which substantially limits one or more major life activities, including but not limited to thinking, expressing emotions, displaying mood, interacting with others.

36. The Calvin Baseball team is a program or activity operated by Calvin University, a recipient of federal financial assistance.

37. Calvin University discriminated against Andrew when, because of his disability, it excluded him from participation in, denied him the benefits of, and/or otherwise limited him his enjoyment of the right, privilege, advantage, or opportunity enjoyed by his non-disabled teammates.

38. Such discrimination has damaged Andrew as described herein and below.

### *Count II - Persons with Disabilities Civil Rights Act*
### *(both defendants)*

39. Defendants Calvin and Van Duyn are each "persons" as defined by Michigan's Persons With Disabilities Civil Rights Act, MCL § 37.1101 *et seq.* (the "PWDCRA").

40. Calvin is a place of public accommodation as it is an educational institution, as defined by § 37.1301.Defendants' discrimination against Andrew, as described herein, is in violation of the PWDCRA.

41. Andrew has a disability as defined by MCL § 37.1103.

42. Defendants have discriminated against Andrew in violation of PWDCRA.

43. Calvin's discrimination has damaged Andrew as defined herein and below.

### **Damages**

44. As a direct and proximate result of Defendants' discriminatory actions, Plaintiff suffered damages as follows:

7

  a. *Economic Damages* – lost educational, scholarship, and potential professional baseball playing opportunities resulting from his dismissal from the team, and incidental and consequential damages including attorney fees.

  b. *Non-Economic Damages* – harm to reputation, emotional distress, mental anguish and continuing mental anguish, denial of social pleasures and enjoyment, inconvenience, embarrassment, ridicule, humiliation, mortification, fear, and/or outrage, as warranted by the proofs.

45. At all time's relevant, Plaintiff has made a good faith effort to mitigate his damages.

46. Under Section 504, an aggrieved person may be entitled to compensatory damages, injunctive relief, and attorney fees; the same is true under PWDCRA.

**Jury Demand**

Plaintiff demands a trial by jury on all issues so triable.

**Relief Requested**

*W H E R E F O R E* Andrew Ballenger requests this honorable court grant him the following as permitted by law and equity:

 a. compensatory damages;

 b. equitable and/or injunctive relief;

 c. compensable costs, interest, and reasonable attorney fees;

 d. declaratory or injunctive relief;

 e. any other relief as appropriate and permitted in law and equity, to vindicate his rights as a person with a disability.

                              Respectfully submitted,

                              Attorneys for Plaintiff:

                              NACHT & ROUMEL, P.C.

                              *s/Nicholas Roumel*

June 22, 2023                     Nicholas Roumel